UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-02-0653 |
| | § | CIVIL ACTION  NO. H-04-3346 |
| LEONEL GOMEZ-GALICIA, | § | |
| | § | |
| Defendant-Movant. | § | |

**MEMORANDUM AND RECOMMENDATION GRANTING
GOVERNMENT'S MOTION FOR DISMISSAL AND DENYING
§ 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is the Government's Answer and Motion for Dismissal under Rule 8(a) (Document No. 27), and Movant Leonel Gomez-Galicia's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 25).  After reviewing the Motion to Vacate, Set Aside or Correct Sentence, the Government's Answer and Motion for Dismissal, Gomez-Galicia's Traverse (duplicate Document Nos. 28 & 29), the record of the proceedings before the District Court in the underlying criminal case and on appeal, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's Motion for Dismissal be GRANTED, that Movant's § 2255 Motion to Vacate, Set Aside or Correct Sentence be DENIED, and that this § 2255 proceeding be DISMISSED on the merits.

I.      **Background and Procedural History**

Movant Leonel Gomez-Galicia ("Gomez-Galicia"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Gomez-Galicia's first motion pursuant to § 2255.

On October 21, 2002, Gomez-Galicia was charged in a two-count Indictment with possession with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i) (Count One), and importing one kilogram or more of heroin, in violation of 21 U.S.C. § 952(a), 960(b)(1)(A) (Count Two). On December 5, 2002, Gomez-Galicia pled guilty to both counts without a plea agreement and, following the preparation of a presentence investigation report, was sentenced to 70 months confinement, to be followed by a five year term of supervised release. (Document Nos. 7 & 15). Judgment was entered on April 3, 2003. (Document No. 18).

Gomez-Galicia appealed his sentence to the Fifth Circuit Court of Appeals. The Fifth Circuit affirmed the sentence in an unpublished opinion entered on December 9, 2003. Gomez-Galicia's petition for writ of certiorari was thereafter denied by the United States Supreme Court on March 22, 2004. Gomez-Galicia then, on or about August 23, 2004, filed his § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 25). The Government, in response, has filed an Answer and a Motion for Dismissal (Document No. 27), to which Gomez-Galicia has filed a Traverse (duplicate Document Nos. 28 & 29). This § 2255 proceeding is now ripe for ruling.

## II. Issues Presented

Gomez-Galicia raises three claims in this § 2255 proceeding:

(1) that his trial counsel, Tom Berg of the Federal Public Defender's Office, was ineffective at sentencing for failing to effectively argue for a minor role reduction in the base offense level under § 3B1.2 of the United States Sentencing Guidelines;

(2) that trial counsel was ineffective at sentencing for failing to argue that Gomez-Galicia had no knowledge of the amount of heroin he was transporting, thereby warranting a reduction in his base offense level; and

(3) that his sentence, which is based on facts not admitted by him or found by a jury beyond a reasonable doubt, is unconstitutional and runs afoul of the United States Supreme Court's decision in *Blakely v. Washington*, 124 S.Ct. 2531 (2004).

## III. Discussion - Ineffective Assistance of Counsel Claims

Gomez-Galicia contends, in claim one, that trial counsel was ineffective for failing to more effectively argue that he was entitled to a minor participant reduction under § 3B1.2 of the Guidelines. According to Gomez-Galicia, the record shows that he was acting solely as a courier or "mule", and that he had a lesser involvement in the offense and lesser culpability than those who owned the heroin, those who recruited him to transport the heroin, those who created the false compartment in which the heroin was placed, and those who were to have distributed the heroin. Gomez-Galicia additionally argues that counsel was ineffective for failing to cite to cases which would have supported a minor participant reduction under § 3B1.2. In claim two, Gomez-Galicia faults counsel for failing to emphasize and elaborate on his lack of knowledge regarding the quality of heroin he was carrying. Such lack of knowledge, Gomez-Galicia maintains, may have supported a downward departure.

Claims of ineffective assistance of trial counsel are generally measured by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

4

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight.

The record in this case shows that counsel filed written Objections (Document No. 10) to the PSR based on the absence of a minor role reduction under § 3B1.2 of the Sentencing Guidelines. Counsel argued, as follows, that a minor role reduction was warranted:

> PSR ¶ 26. The probation office makes no adjustment for role in the offense. There is no dispute that Mr. Gomez served as a courier or mule in this offense. Although not reflected in the PSR, Mr. Gomez, upon arrest, immediately cooperated with the government, providing a statement in Spanish, detailing his role and that of others, including one by name who were involved both in Guatemala and in New York where he was to deliver the drugs. He provided sufficient detail, cooperation and credibility that the arresting officers in Houston decided to attempt a controlled delivery using Mr. Gomez. This was frustrated only by the decision of New York agents that they lacked sufficient resources to assist the Houston officers. Mr. Gomez was ready, willing and able to follow through.
>
> Recent amendments to the guidelines reflect a recognition by the Sentencing Commission that "mules" generally should not be held accountable for the full quantity of drugs over which they have little authority and lower degrees of individual culpability. See USSG App C, amends., 635 (eff. November 1, 2001) and 640 (eff. November 1, 2002), amending USSG §§ 2D1.1 and 3B1.2. The principal effect is to cap the offense level at 30 for these lesser participants and still award a two-level reduction for a minor role. Mr. Gomez's offense level based on quantity alone is level 32 without regard for his role in the offense. Clearly he is in that group of individuals contemplated by the Sentencing Commission for relief.

5

> He is less culpable than the traffickers at either end of the distribution chain in this case and as such merits a two-level role reduction under USSG § 3B1.2(b). See USSG § 3B1.2, comment n.3.A ("For example, a defendant who is convicted of a drug trafficking offense whose role in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline."). See also USSG, App C, amend. 635 (amending USSG § 3B1.2 and resolving circuit conflict in favor of consideration of mitigating role "in the context of a drug courier, for example"). The result of this application of the amended guidelines is a final offense level of 23 rather than 27, and a sentencing range of 46 to 57 months.

(Document No. 10). At sentencing, the District Court overruled counsel's objection as follows:

> The objection made by the defendant as to Paragraph 26, objecting that he should be accorded a minor role adjustment because he was a courier, I've been invited to consider the Application Note 3 of Section 3B1.2 indicating a transporter does not necessarily preclude from consideration for this adjustment. I have considered that. In this case I find that it is not warranted. This defendant played a very important, integral role in this drug transaction. He was to be paid $6,000 for this particular transportation, according to his own words. He had previously in the previous week undertaken to make $5,000 in the same engagement. He was the only one involved – well, I say the only one – principal one involved, certainly.
>
> In Count Two, a count of conviction, which is the importation of one kilogram or more of the heroin, he himself being the importer and the only one that actually imported it into the country, although he well may have had confederates and probably did at both ends of his particular transportation of business.
>
> And for all of those reasons, since he's held accountable only for the amount that he himself was transporting and bringing into the country, the objection is denied.

Sentencing Transcript (Document No. 22) at 3-4. On appeal, the Fifth Circuit upheld the District Court's ruling in this regard. (Document No. 24) ("The district court did not clearly err in determining that Gomez was not entitled to a minor role reduction pursuant to U.S.S.G. § 3B1.2(b). See United States v. Zuniga, 18 F.3d 1254, 1261 (5th Cir. 1994). Gomez did not

6

demonstrate that he was peripheral to the advancement of the illicit activity.  See United States v. Miranda, 248 F.3d 434, 446-47 (5th Cir. 2001)).

Section 3B1.2 of the Sentencing Guidelines provides for the reduction of a defendant's base offense level depending upon the defendant's relative role in the offense:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a)    If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b)    If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

The relevant application notes to § 3B1.2 provide as follows:

> 3.    <u>Applicability of Adjustment.</u> –
>       (A)    <u>Substantially Less Culpable than Average Participant.</u> – This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant.
>
>              A defendant who is accountable under § 1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline.  For example, a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under § 1 B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline.
>
>                                        * * *
>
> 5.    <u>Minor Participant.</u> – Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants, but whose role could not be described as minimal.

7

In *United States v. Buenrostro*, 868 F.2d 135, 137-38 (5th Cir. 1989), *cert. denied*, 495 U.S. 923 (1990), the Fifth Circuit addressed the applicability of § 3B1.2 to a single defendant case in which the defendant was a courier of heroin. In upholding the District Court's denial of a reduction under § 3B1.2, the Fifth Circuit found that the mere fact that a defendant is acting as a drug courier does not warrant a reduction under § 3B1.2. Rather, the applicability of § 3B1.2 "turns on culpability, not courier status. . . . [A defendant] may be a courier without being substantially less culpable than the average participant." *Id.* at 138. Then, in *United States v. Valencia-Gonzales*, 172 F.3d 344 (5th Cir.), *cert. denied*, 528 U.S. 894 (1999), the Fifth Circuit revisited the issue of the applicability of § 3B1.2 to drug courier cases. In *Valencia*, the defendant, acting as a mere courier, sought a reduction under § 3B1.2, for what he characterized as his "minor participant" role. The District Court refused to make an adjustment under § 3B1.2 and Valencia appealed. On appeal, the Fifth Circuit upheld the District Court's refusal to grant a reduction under § 3B1.2, writing,

> A downward adjustment is appropriate "only where a defendant was '*substantially less culpable* than the average participant.' " *United States v. Brown*, 54 F.3d 234, 241 (5th Cir.1995) (ultimately quoting U.S.S.G. § 3B1.2 (background)). Valencia contends he was a mere "mule," but he admitted that he was to be paid $14,000 for his role, that he transported the heroin from Colombia to Houston, that he was supposed to meet a co-conspirator in San Antonio, and that they were to travel together to New York. (During a controlled delivery, his co-conspirator did not meet him, making it possible to infer that Valencia had misrepresented his role.) Valencia was carrying a non-trivial quantity of heroin (1005 grams). Furthermore, he was sentenced only for the amount that he was actually carrying. *See United States v. Marmolejo*, 106 F.3d 1213, 1217 (5th Cir.1997); *United States v. Flucas*, 99 F.3d 177, 181 (5th Cir.1996). Under the circumstances, the district court did not clearly err in concluding that Valencia's role was not minimal.

*Valencia*, 172 F.3d at 346-347. Recently, in *United States v. Villanueva*, 408 F.3d 193, 203-204 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 268 (2005), the Fifth Circuit set forth what is required for a reduction under § 3B1.2:

> . . . . The reduction for being a minor or minimal participant remains available for a defendant, like Villanueva, who was only held accountable for the conduct in which he was personally involved. U.S.S.G. § 3B1.2, cmt. n. 3(A). However, § 3B1.2 only applies when a defendant is "substantially less culpable than the average participant." *Id.* It is not enough that a defendant "does less than other participants; in order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity."

*Villanueva*, 408 F,3d at 203-204 (quoting *United States v. Miranda*, 248 F.3d 434, 446-47 (5th Cir. 2001)).

In this case, given the amount of heroin Gomez-Galicia was carrying (1 kilogram), generally the same type of non-trivial amount as was at issue in *Valencia*, the absence of any evidence that Gomez-Galicia was "substantially less culpable" than an average participant in a drug smuggling activity such as this, and the fact that Gomez-Galicia was not "peripheral" to the advancement of the drug trafficking offenses with which he was charged, counsel's performance at sentencing was not deficient and Gomez-Galicia was not prejudiced thereby.

As for Gomez-Galicia's claim that counsel was ineffective for failing to argue for and secure a downward departure based on the fact that he had no knowledge of the amount of heroin he was carrying, such a claim also fails under *Strickland*. Gomez-Galicia points to no case law, statute, or provision of the sentencing guidelines which would have supported a downward departure based solely on the fact that he did not know the amount of heroin he was carrying. In addition, as is made clear by the sentencing guidelines themselves, downward departures are to be rarely granted, and are limited to situations in which particular offense or offender

9

characteristics have not been adequately taken into consideration in the guidelines as a whole. Here, the fact that Gomez-Galicia may not have known the quantity of heroin he was carrying is a factor that is neither rare nor left unconsidered by the guidelines. As such, counsel was not ineffective for failing to seek a departure based on Gomez-Galicia's ignorance of the amount of heroin he was carrying.

## IV.  Discussion – *Blakely* Claim

In his third claim, Gomez-Galicia argues that his sentence is unconstitutional under *Blakely*. Gomez-Galicia further argues that even though *Blakely* was not decided at the time he was sentenced, he is entitled to the benefit of the *Blakely* decision because *Blakely*, for all intents and purposes, arose out of, and was based on, the Supreme Court's prior decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), a decision which pre-dated his sentencing.

In *Blakely*, the Supreme Court invalidated a sentencing scheme in effect in the State of Washington, which allowed a judge to sentence a defendant to a punishment beyond a statutory range on the basis of judicially determined facts. *Id.* at 2538. In doing so, the Supreme Court applied the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." No mention was made in *Blakely* about the validity of the United States Sentencing Guidelines. In *United States v. Booker,* 125 S.Ct. 738 (2005), however, the Supreme Court extended its holding in *Blakely* to the Federal Sentencing Guidelines, and concluded that there was "no distinction of constitutional significant between the Federal Sentencing Guidelines" and the

state sentencing scheme at issue in *Blakely*. In keeping with its earlier decision in *Apprendi*, the Supreme Court in *Booker* held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756.

No relief is available to Gomez-Galicia on his *Blakley/Booker* claim because *Blakely/Booker* has been held not to apply retroactively to cases on initial collateral review. *See United States v. Gentry*, 432 F.3d 600, 603 (5th Cir. 2005). Gomez-Galicia's conviction became final in March 2004, when the United States Supreme Court denied his petition for writ of certiorari. Both *Blakely* and *Booker* were decided thereafter.

### V. Conclusion and Recommendation

Based on the foregoing and the conclusion that Gomez-Galicia is not entitled to any relief on the claims he raises in his § 2255 Motion, the Magistrate Judge

RECOMMENDS that Government's Motion for Dismissal (Document No. 27) be GRANTED, that Movant Leonel Gomez-Galicia's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 25) be DENIED, and that this § 2255 proceeding be DISMISSED on the merits.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from

attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 27th day of January, 2006.

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE